## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARCELLUS WASHINGTON,　　　　:　　　Civil No. 3:23-cv-515
　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff　　　　　　　:　　　(Judge Mariani)
　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
FEDERAL BUREAU OF PRISONS　　:
CENTRAL OFFICE/GENERAL　　　　:
COUNSEL, *et al.*,　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Defendants　　　　　　:

FILED
SCRANTON

SEP 2 2 2025

PER _____
DEPUTY CLERK

### MEMORANDUM

Plaintiff Marcellus Washington ("Washington"), an inmate in the custody of the

Federal Bureau of Prisons ("BOP"), is pursuing claims in this action pursuant to *Bivens v.*

*Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)[1], and the Federal Tort Claims Act

("FTCA").[2]  (Doc. 1).  Named as Defendants are the BOP Central Office, the BOP Northeast

Regional Office, Abram Wright, Jeremy Sweeting, Jace Conklin, Dennis Sullivan, Chalique

Williams, Jessica Garrison, Amy Walls, Corey McCauley, and Daniel Marr.  (*Id.*).

---

[1]　In *Bivens*, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

[2]　The FTCA vests exclusive jurisdiction in district courts for claims against the United States for money damages involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

Presently pending before the Court is Defendants' motion (Doc. 36) to dismiss or, in the alternative, for summary judgment. The motion is ripe for resolution. For the reasons set forth below, the Court will grant the motion.

## I.    Statement of Undisputed Facts[3]

Washington is a federal inmate serving a life sentence imposed by the United States District Court for the Western District of Louisiana for attempted murder of a federal employee and resisting a federal employee. (Doc. 42 ¶ 1). Washington is currently designated to the United States Penitentiary, Coleman II, in Sumter, Florida. (*Id.* ¶ 2).

Washington was housed at the United States Penitentiary, in Allenwood, Pennsylvania ("USP-Allenwood"), between October 20, 2015, and February 14, 2022. (*Id.* ¶ 3).

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 42). Although Washington filed a brief (Doc. 52) in opposition to Defendants' motion, he failed to file a separate statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance"); *see also* Doc. 49 ¶ 2, Doc. 51 ¶ 3 (advising Washington that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

The allegations of the complaint relate to an alleged incident that occurred on October 29, 2021, when Washington was housed at USP-Allenwood. (Doc. 1, at 1-2, 6). The crux of Washington's claim is that staff members assaulted him during a routine cell extraction when he was confined in the Transitional Care Unit, and that prison staff fabricated an incident report wherein staff claimed that Washington attempted to assault staff during that cell extraction. (*Id.* at 6-8).

A.    Washington's Administrative Tort Claim Remedies

The BOP maintains administrative claims filed pursuant to the Federal Tort Claims Act in a computerized database called "Content Manager" or "Case File Manager" which catalogs all administrative claims filed with the BOP since 2007. (Doc. 42 ¶ 4). According to the BOP administrative tort claim database, Washington has not filed any administrative tort claims since 2019, nor has he filed any administrative tort claims concerning the October 29, 2021 incident. (*Id.* ¶ 5). Although Washington did not file a responsive statement of facts, in his opposition brief, he asserts that he submitted an administrative tort claim regarding the October 29, 2021 incident with the Regional Office on June 12, 2022. (Doc. 52-2, at 1-9).

B.    Disciplinary Proceedings

On October 29, 2021, at USP-Allenwood, Officer Abram Wright issued Washington Incident Report Number 3562139. (Doc. 42 ¶ 6). According to Officer Wright, on October 29, 2021, at approximately 6:30 a.m., Washington began to be insolent toward staff by

3

demanding that staff come to his cell and saying to them: "Get off your ass and come down here you fat fucks." (*Id.* ¶ 7). When Officer Wright approached Washington's door, Washington was at the door and said, "Fuck you fat ass, you can't get off your bitch ass and come down here?" (*Id.* ¶ 8). According to Officer Wright, Washington continued to be loud and verbally aggressive toward staff while in his cell and, after being released from his cell, Washington became verbally aggressive saying "fuck you, the fuck you doing this for?" and became resistant to being pat searched, disobeyed a direct order to place his hands on the wall, attempted to push off the wall while being searched, and attempted to turn toward Officer Wright in an aggressive manner. (*Id.* ¶ 9).

Incident Report Number 3562139 charged Washington with refusing to obey an order (code 307), being insolent to staff members (code 312), and assaulting without serious injury (code 224). (*Id.* ¶ 10).

On November 2, 2021, Washington was advised of his rights before the Discipline Hearing Officer ("DHO"). (*Id.* ¶ 11). The DHO hearing was held on December 8, 2021. (*Id.* ¶ 12). Washington invoked his right to a staff representative. (*Id.* ¶ 13). At the time of the hearing, Washington denied the charge and stated: "I did not attempt to [a]ssault the officer. I did not refuse a pat search. My light went off that morning and I was complaining about getting it working and it was quite (sic) in the Unit and my voice appeared to loud to staff. I did not call staff members any names." (*Id.* ¶ 14). Washington initially waived the right to present witnesses, but at the time of the hearing, his staff representative, Dr. Garrison,

4

provided witness statements of three inmates. (*Id.* ¶ 15). The DHO considered the following evidence: Incident Report Number 3562139, documentary evidence, video evidence, Washington's statement, and the witness' statements. (*Id.* ¶ 16). The DHO found that Washington committed the prohibited acts of refusing to obey an order (code 307), being insolent to staff members (code 312), and assaulting without serious injury (code 224). (*Id.* ¶ 17). Specifically, the DHO noted:

> The DHO could find no reason staff reporting this incident had a reason to fabricate any evidence in this case. The DHO also notes that while this incident did not appear as a[ ] direct attempted assault on staff[,] inmate Washington was guilty of interfering with staff by not complying on initial contact with staff orders and then attempting to turn around during a pat search more than once. Passive resistance techniques used by inmate Washington will not be tolerated.

(*Id.* ¶ 18).

As a result of the finding of guilt, the DHO imposed the following sanctions: 10 days of disciplinary segregation; 6 months loss of commissary privileges; 6 months loss of email privileges; and 3 months loss of visitation privileges. (*Id.* ¶ 19).

At the conclusion of the hearing, Washington was advised of the findings, the evidence relied upon by the DHO, and his right to appeal. (*Id.* ¶ 20). Washington received the DHO report on December 13, 2021. (*Id.* ¶ 21).

Washington's Inmate Discipline Data confirms that the DHO decision has not been disturbed on appeal. (*Id.* ¶ 22). Washington pursued an appeal of the DHO decision to the BOP Regional Office. (*Id.* ¶ 23). On March 4, 2022, the BOP Regional Office denied the

appeal. (*Id.*). Washington then filed an appeal to the BOP Central Office, and on May 24, 2022, the BOP Central Office denied his appeal. (*Id.*).

## II.    Legal Standards

### A.    *Bivens* Claim

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens*, 403 U.S. 388). As such, "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Id.* at 70. Courts have interpreted a *Bivens* action as "the federal equivalent of the § 1983 cause of action against state actors" and exists where federal officers, acting "under color of federal law[,]" violate a plaintiff's constitutional rights. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

### B.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that a claim, on its face, is "insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2012). A facial challenge

6

"requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)).

A factual challenge maintains "that there is no subject matter jurisdiction because the facts of the case...do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis*, 824 F.3d at 346 (quoting *Aichele*, 757 F.3d at 358) (internal quotation marks omitted). When a factual challenge is made, the plaintiff has the burden of proof that jurisdiction does exist, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

C.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

7

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but…disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

D.    Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record…or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.    Discussion

Defendants move to dismiss, or seek summary judgment, on the following grounds: (1) Washington's official capacity *Bivens* claims for monetary damages are barred by sovereign immunity; (2) Washington failed to allege a physical injury; (3) a *Bivens* remedy is not available for Washington's claims; (4) even if this Court found that a *Bivens* remedy is available to Washington, Defendants are entitled to qualified immunity[4]; and (5) Washington failed to satisfy the FTCA's jurisdictional tort claim requirement of 28 U.S.C. § 2401(b). (*See* Doc. 43).

### A.    *Bivens* Claim Against Defendants in their Official Capacities

Defendants first seek dismissal of the *Bivens* claim against them in their official capacities, based on sovereign immunity.  (Doc. 43, at 21-23).

*Bivens* constitutional tort lawsuits can only be lodged against individual government officials. *Bivens*, 403 U.S. at 397.  It is well-settled that *Bivens* actions against the United States—and, by extension, against federal agencies or officials sued in their official capacity—are barred by sovereign immunity, absent an explicit waiver of that immunity. *FDIC v. Meyer*, 510 U.S. 471, 483 (1994).  The United States and its agencies have not waived immunity.  An action against prison officials in their official capacities constitutes an action against the United States.  Therefore, a *Bivens* action cannot be brought against the

---

[4]    Because the Court declines to extend *Bivens* to Washington's Fifth, Eighth, and Fourteenth Amendment claims, the Court does not reach Defendants' alternative argument regarding qualified immunity.

United States, or a federal agency or official, since such claims are plainly barred by the doctrine of sovereign immunity. *See Malesko*, 534 U.S. at 72 ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.").

Washington's *Bivens* claims against the Defendants in their official capacities are essentially claims against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

B.    Failure to Allege a Physical Injury

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury..." 28 U.S.C. § 1997e(e). To satisfy the PLRA, the plaintiff-prisoner must allege a "less-than-significant-but-more-than-*de minimis* physical injury." *Mitchell v. Horn*, 318 F.3d 523, 534 (3d Cir. 2003).

If a plaintiff fails to allege a sufficient physical injury in the context of an alleged constitutional violation, they may not seek an award of compensatory damages; however, they may still seek nominal or punitive damages. *See id.* at 533; *see also Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000) (concluding that Section 1997e(e) does not bar plaintiff from seeking award of nominal or punitive damages for alleged constitutional violation).

Washington does not allege that he suffered *any* physical injury, let alone a *de minimis* physical injury, as required for a predicate to emotional injury. *See Mitchell*, 318 F.3d at 534-36. Rather, he asserts that he suffered "losses of certain rights and privilege[]s, and incentive benefits" and mental distress. (Doc. 1, at 7, 12). Thus, he fails to satisfy Section 1997e(e)'s physical injury requirement, and the Court will dismiss his claim for compensatory damages.

C.    A *Bivens* Remedy is not Available for Washington's Fifth and Eighth Amendment Claims Against the Defendants in their Individual Capacities

Defendants argue that Washington's due process and excessive force claims must be dismissed on the basis that there is no *Bivens* remedy available for these Fifth and Eighth Amendment claims following the United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017). (Doc. 43, at 24-32). The Court agrees and begins its discussion with an overview of *Bivens*.

In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed

13

by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens*,

403 U.S. at 397. The availability of *Bivens* as a cause of action is limited, and the United

States Supreme Court "has plainly counseled against creating new *Bivens* causes of

action." *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017); *see also Hernandez*

*v. Mesa*, 589 U.S. 93, 101-02 (2020) (stating that the "expansion of *Bivens* is a disfavored

judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were

decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently

rebuffed requests to add to the claims allowed under *Bivens*." (internal quotations marks

and citations omitted)). Since *Bivens* was decided in 1971, the Supreme Court "has

repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific

amendments [of the Constitution] for which a cause of action has already been implied, or

even to other classes of defendants facing liability under those same clauses." *Vanderklok*,

868 F.3d at 200. The Supreme Court has recognized an implied private action against

federal officials in only three cases: (1) *Bivens* itself—a claim under the Fourth Amendment

against FBI agents for handcuffing a man in his own home without a warrant, *Bivens*, 403

U.S. at 389; (2) a claim under the Fifth Amendment against a Congressman for firing his

female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) a claim under the Eighth

Amendment against prison officials for failure to treat an inmate's asthma, *Carlson v. Green*,

446 U.S. 14 (1980).

The Supreme Court's decision in *Ziglar*, 582 U.S. 120, sets forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Ziglar*, 582 U.S. at 138. If the case differs "in a meaningful way" from previous *Bivens* cases decided by the Supreme Court, "then the context is new." *Ziglar*, 582 U.S. at 139. And the meaning of "new context" is "broad." *Hernandez*, 589 U.S. at 102. Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *Hernandez*, 589 U.S. at 102. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102) (internal quotation marks omitted).

The Supreme Court decision in *Egbert* reemphasizes that the continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *Egbert*, 596 U.S. at 491 (quoting *Ziglar*, 582 U.S. at 135). In a recent decision, the Third Circuit Court of Appeals analyzed *Egbert* and abrogated earlier decisions recognizing that its own extensions of *Bivens* were no longer tenable given recent Supreme Court decisions. *Fisher*

*v. Hollingsworth*, 115 F.4th 197, 206 (3d Cir. 2024) (holding that the Supreme Court

decision in *Egbert* "seriously undermines the rationale of *Bistrian [v. Levi*, 912 F.3d 79 (3d

Cir. 2018)] and *Shorter [v. United States*, 12 F.4th 366 (3d Cir. 2021)]"—cases involving

inmate-on-inmate assault).  The *Fisher* court explained that *Egbert* "tightened the *Ziglar* test

and, in doing so, made a strong statement that lower courts should not extend *Bivens*

beyond the contexts recognized in *Bivens*, *Davis*, and *Carlson*."  *Fisher*, 115 F.4th at 204.

*Egbert*'s "new articulation" of the new context step of the *Ziglar* test "unequivocally narrows

the universe of relevant cases to just three," i.e., *Bivens*, *Davis*, and *Carlson*.  *Fisher*, 115

F.4th at 204.  In yet another recent decision, the Third Circuit Court of Appeals refused to

extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally

convicted prisoners because the Eighth Amendment claim was "far broader in scope than

that in *Carlson*."  *Kalu v. Spaulding*, 113 F.4th 311, 338 (3d Cir. 2024).

In June of 2025, the United States Supreme Court held that an Eighth Amendment

excessive force claim brought by a federal inmate against federal corrections officers

presented a new *Bivens* context and that "'special factors' counsel against recognizing an

implied *Bivens* cause of action for Eighth Amendment excessive-force violations."  *Goldey v.*

*Fields*, 606 U.S. 942, 944 (2025).  The *Goldey* Court reasoned that "Congress has actively

legislated in the area of prisoner litigation but has not enacted a statutory cause of action for

money damages."  *Id.* (citations omitted).  It further reasoned that "extending *Bivens* to allow

an Eighth Amendment claim for excessive force could have negative systemic

16

consequences for prison officials and the 'inordinately difficult undertaking' of running a prison." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Finally, the *Goldey* Court explained that the existence of an alternative remedial structure for aggrieved federal prisoners "counsels against allowing *Bivens* suits even if such 'procedures are not as effective as an individual damages remedy." *Id.* at 944-45 (quoting *Egbert*, 596 U.S. at 498).

Mindful of these decisions, the Court proceeds with *Ziglar*'s two-step analysis.

### 1.    New Context

Washington's claims present new contexts—they differ "in a meaningful way" from *Bivens*, *Carlson*, and *Davis*. *Ziglar*, 582 U.S. at 139.

First, Washington asserts a *Bivens* claim based upon allegations that his due process rights were violated under the Fifth Amendment when Defendant Wright allegedly falsified an incident report. Although the Supreme Court has recognized a *Bivens* action for gender discrimination in violation of the Fifth Amendment, *see Davis*, 442 U.S. at 230, Washington's claim plainly presents a new *Bivens* context and is factually different from the gender discrimination context in *Davis*.

Second, Washington sets forth a *Bivens* claim based upon allegations that Defendants used excessive force against him, and that BOP staff failed to intervene in the excessive force or disciplinary action, in violation of the Eighth Amendment. The Supreme Court's decision in *Goldey* forecloses any cognizable Eighth Amendment excessive force

claim in this case. *See Goldey*, 606 U.S. 942. Additionally, the Supreme Court has never

recognized an Eighth Amendment claim arising from a correctional officer's failure to

intervene. *See Fields v. Federal Bureau of Prisons*, 2025 WL 2409060, at *2 (3d Cir. Aug.

20, 2025) ("extending *Bivens* to allow Eighth Amendment claims for excessive force,

confinement conditions, and failure to protect would substantially burden prison

operations.").

For these reasons, the Court finds that Washington's due process, excessive force,

and failure to intervene claims present new contexts for *Bivens* liability. Thus, the Court will

turn now to the second step and determine whether any special factors are present.

## 2.    Special Factors

Having concluded that Washington's claims present new contexts, the court must

determine whether "there are any special factors that counsel hesitation" in extending

*Bivens*. *Hernandez*, 589 U.S. at 102 (internal quotation marks and alterations omitted)

(quoting *Ziglar*, 582 U.S. at 136). If a court "ha[s] reason to pause before applying *Bivens* in

a new context or to a new class of defendants," then special factors counseling hesitation

exist. *Hernandez*, 589 U.S. at 102.

In *Fisher*, the Third Circuit Court of Appeals recognized that the Bureau of Prisons'

administrative remedy program is a special factor barring extension of the *Bivens* remedy to

new contexts. *Fisher*, 115 F.4th at 207-08; *see also Kalu*, 113 F.4th at 346 ("The BOP's

[administrative remedy program] is an 'administrative review mechanism[ ]' established by

the political branches that 'foreclose[s] the need to fashion a new, judicially crafted cause of action.'" (quoting *Malesko*, 534 U.S. at 68). And, as the Supreme Court in *Goldey* stated, "'an alternative remedial structure' already exists for aggrieved federal prisoners." *Goldey*, 606 U.S. at 944. (quoting *Ziglar*, 582 U.S. at 137). "The existence of such alternative remedial procedures counsel against allowing *Bivens* suits even if such 'procedures are not as effective as an individual damages remedy.'" *Id.* at 944-45 (quoting *Egbert*, 596 U.S. at 498). Therefore, the administrative remedy program bars this Court from extending *Bivens* to the new contexts presented by Washington's claims. Accordingly, the Court will enter judgment in favor of Defendants on these *Bivens* claims.

>    D.    A *Bivens* Remedy is not Available for Washington's Fourteenth Amendment Claim

Washington also raises a Fourteenth Amendment equal protection claim. Because of their status as federal actors, Defendants maintain that the Fourteenth Amendment does not apply to the federal government. (Doc. 43, at 32). They argue that due to the Fourteenth Amendment being applied to the states, Washington has no Fourteenth Amendment *Bivens* claim against the Defendants. (*Id.*).

It is well-settled that the Fourteenth Amendment of the United States Constitution does not apply to federal actors. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (noting that the Fourteenth Amendment applies only to the states); *In re Automotive Refinishing Paint*, 229 F.R.D. 482, 488 (E.D. Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government...while the Fourteenth Amendment Due Process Clause

applies to the states."). Accordingly, Washington has no claims against the Defendants under the Fourteenth Amendment of the United States Constitution.

E.    FTCA Claim Against the Individual Defendants

Washington sets forth an FTCA claim, based on negligence and assault, due to the alleged actions of government employees acting within the scope of their employment. (Doc. 1, at 9-11). Defendants argue that the FTCA claim must be dismissed for lack of subject matter jurisdiction.[5] (Doc. 43, at 41-42).

Under the doctrine of sovereign immunity, the United States is immune from suits seeking monetary damages, unless it consents to being sued through an act of Congress waiving immunity. *Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Absent such a waiver of sovereign immunity, federal courts lack subject matter jurisdiction to hear claims against the United States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Because waiver of sovereign immunity is jurisdictional, the party invoking federal jurisdiction bears the burden of establishing that the United States has waived its immunity. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The FTCA provides a limited waiver of sovereign immunity. The FTCA states:

_____

[5]    The Court may consider documents relevant to subject matter jurisdiction over Washington's FTCA claim. *See Wills v. USP Canaan*, 635 F. App'x 5, 8 (3d Cir. 2015) (noting the district court "was free to weigh the evidence presented and satisfy itself that the exercise of its jurisdiction was proper" where the Government's motion to dismiss constituted a factual attack on the existence of subject matter jurisdiction).

> [T]he district courts…shall have exclusive jurisdiction of civil actions on claims
> against the United States, for money damages,…for injury or loss of property,
> or personal injury or death caused by the negligent or wrongful act or
> omission of any employee of the Government while acting within the scope of
> his office or employment….

28 U.S.C. § 1346(b)(1). Thus, the United States has consented to suit under the FTCA,

permitting judicial review of FTCA claims based on the acts or omissions of government

employees. *See CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008) (reasoning that 28

U.S.C. § 1346(b)(1), the FTCA provision conferring jurisdiction on district courts, treats

actions against government employees like the "analogous behavior" of "private persons"

under state law).

A prerequisite to suit under the FTCA is that a claim must first be presented to the

federal agency and be denied by that agency. Specifically, the FTCA provides:

> An action shall not be instituted against the United States for money damages
> for injury or loss of property or personal injury…unless the claimant shall have
> first presented the claim to the appropriate Federal agency and his claim shall
> have been finally denied by the agency in writing and sent by certified or
> registered mail.

28 U.S.C. § 2675(a). To satisfy this "presentment" requirement, a plaintiff must file written

notice of the claim within two years after the claim accrues to the appropriate federal agency

and make a demand for a sum certain. *See* 28 U.S.C. §§ 2675(a), (b); *see also* 28 U.S.C. §

2401(b) ("A tort claim against the United States shall be forever barred unless it is

presented in writing to the appropriate Federal agency within two years after such claim

accrues or unless action is begun within six months after the date of mailing, by certified or

registered mail, of notice of final denial of the claim by the agency to which it was

presented.").  A claim is presented when the federal agency receives from the claimant "an

executed Standard Form 95 or other written notification of an incident, accompanied by a

claim for money damages in a sum certain for injury..."  28 C.F.R. § 14.2.  "The failure of an

agency to make final disposition of a claim within six months after it is filed shall, at the

option of the claimant any time thereafter, be deemed a final denial of the claim."  28 U.S.C.

§ 2675(a).  "The final denial requirement is 'jurisdictional and cannot be waived.'"  *Lightfoot*

*v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (quoting *Bialowas v. United States*, 443

F.2d 1047, 1049 (3d Cir. 1971)).  The plaintiff has the burden of demonstrating that a proper

administrative claim was filed.  *See Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186,

1195 (3d Cir. 1989).  A failure to comply with the prerequisites set forth in the FTCA prior to

filing suit deprives a court of jurisdiction.  *See McNeil v. United States*, 508 U.S. 106, 113

(1993) ("The FTCA bars claimants from bringing suit in federal court until they have

exhausted their administrative remedies.").

     Here, Defendants submitted the declaration of Joshua M. Bower, a BOP attorney at

USP-Lewisburg.  (Doc. 42-2, Declaration of BOP Attorney Joshua M. Bower ("Bower

Decl.")).  Bower attests that, according to the BOP's computerized database, Washington

has not filed any administrative tort claims since 2019, which predates the incident alleged

in the instant complaint.  (*Id.*, Bower Decl. at 3 ¶ 5; *see also* Doc. 42-5, Administrative Tort

Case File Manager). He further attests that Washington has not filed *any* administrative tort claims concerning the issues he raises in the instant complaint. (*See id.*).

In response, Washington asserts that he filed an administrative tort claim with the Regional Office on June 12, 2022. (Doc. 52, at 7-8; Doc. 52-2, at 1-9). While Washington maintains that he filed this administrative tort claim, he failed to demonstrate that the agency actually received the claim, as is required under the FTCA. "In order to satisfy the presentment requirement, a plaintiff must demonstrate that the appropriate federal agency *actually received* the claim." *Medina v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir. 2007) (emphasis added). The Third Circuit explained that "[t]his is not an onerous requirement, as proof of receipt can easily be obtained by sending a claim by certified mail or by registered mail, or by obtaining acknowledgment of receipt from the agency itself." *Id.* at 172-73. The mere mailing of a claim will not satisfy an FTCA plaintiff's burden of demonstrating that the claim has been presented to the appropriate agency. *See Lightfoot*, 564 F.3d at 627-28 ("We now join these sister Courts in rejecting the mailbox rule and holding that a plaintiff must demonstrate that the Federal agency was in *actual receipt* of the claim[.]" (emphasis added)); *Medina*, 219 F. App'x at 172-74 (affirming dismissal of FTCA claim for lack of subject matter jurisdiction where federal agency's employees certified that agency had no record of administrative claim submitted by plaintiff, despite sworn affidavit of plaintiff's counsel stating claim had been sent).

23

Washington has not submitted proof of receipt of the June 12, 2022 administrative tort claim and has not submitted proof that the administrative tort claim was actually received by the federal agency. (*See* Doc. 52-2, at 1-9). Washington's failure to provide proof of the federal agency's receipt of the claim purportedly sent on June 12, 2022, prevents him from carrying the burden of fulfilling the presentment and exhaustion requirements of the FTCA prior to filing suit as required by 28 U.S.C. § 2675(a). *See Medina*, 219 F. App'x at 172-74. Therefore, this Court lacks subject matter jurisdiction over the FTCA claim, and it will be dismissed. *See Roma v. United States*, 344 F.3d 352, 363 (3d Cir. 2003) (noting "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived."); *Wills v. USP Canaan*, 635 F. App'x 5, 8 (3d Cir. 2015) (plaintiff bears the burden of showing the Court that it has subject matter jurisdiction over the action).[6]

## IV.    Leave to Amend

Having determined that Washington's official capacity claims for monetary damages, his claim for compensatory damages, and his FTCA claim, are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where

---

[6]    The Court further notes that the exhaustion procedure for the FTCA pursuant to 28 U.S.C. § 2675, *et seq.*, is a procedure separate and distinct from the exhaustion of prison remedies under 28 C.F.R. § 542.10, *et seq.* Although Washington has submitted administrative remedy filings related to his efforts to exhaust prison grievances (*see* Doc. 1-1, at 3-16; Doc. 52-1, at 5-6), the exhaustion of prison grievances simply does not satisfy Washington's separate administrative exhaustion obligations under the FTCA.

leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). In determining whether amendment would be futile, "the district court applies the same standard of legal sufficiency as [it] applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the analysis above, the Court finds that granting Washington leave to amend his official capacity claims for monetary damages asserted against the Defendants, his claim for compensatory damages, and his FTCA claim would be futile.

## V.    Conclusion

Consistent with the foregoing, the Court will grant Defendants' motion (Doc. 36) to dismiss and for summary judgment as follows. The official capacity claims for monetary damages against the Defendants and the claim for compensatory damages will be dismissed. The FTCA claim will be dismissed for lack of subject matter jurisdiction. The

motion for summary judgment with respect to the *Bivens* claim will be granted, and judgment will be entered in favor of Defendants.

    A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 19, 2025